**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**SHELBY DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CLEMMER'S CONSTRUCTION, LLC** | ) | **CASE NO. 23-40136** |
| | ) | **CHAPTER 11 (SUBCHAPTER V)** |
| Debtor. | ) | |
| | ) | |

## PLAN OF REORGANIZATION

Clemmer's Construction, LLC, the Debtor, submits this Plan of Reorganization pursuant to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

## DISCLOSURES REQUIRED BY 11 U.S.C. § 1190

The Debtor provides concrete installation and finishing (including demolition) for small to medium commercial jobs in North Carolina, South Carolina, Virginia, Tennessee, and Kentucky. The Debtor's sole and managing member is Michael G. Clemmer.

The Debtor previously faced cash flow shortfalls and was forced to seek advances and/or loans (including MCA transactions) for cash infusions so that it could purchase materials and pay operating expenses. Eventually, the Debtor's cash flow needs stabilized, and it adjusted its business practices to ensure that such shortfalls would not occur again in the future. While the Debtor is profitable, it has been unable to fully repay the loans/advances it previously received. Facing demands for repayment, the Debtor was left to either file for bankruptcy protection or shut down.

The Debtor chose the former and filed for relief under Chapter 11, Subchapter V of the Bankruptcy Code on August 3, 2023 (the "Petition Date"). Through this Plan, the Debtor intends to restructure its secured debt to further improve cash flow and commit its disposable income to its unsecured creditors for three years.

As shown in the attached Liquidation Analysis, this Plan will result in payments to creditors in an amount greater than the same creditors would receive under Chapter 7 of the Bankruptcy Code. You should consult your attorney, accountant, or financial advisor if you have any questions about the Liquidation Analysis.

As shown in the included Financial Projections, the Debtor is able to make the required payments under the Plan. You should consult your attorney, accountant, or financial advisor if you have any questions about the Financial Projections.

## ARTICLE I
## DEFINITIONS

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

1.1     Administrative Claim. Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently. Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business as a debtor in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor as debtor in possession, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, including any funds owed to the Trustee, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code.

1.2     Administrative Claims Bar Date. The date thirty (30) days after the Effective Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court. The Administrative Claims Bar Date shall not apply to fees and expenses of the Debtor's Professionals incurred after the Confirmation Date.

1.3     Allowed Administrative Claim. All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.4     Allowed Claim. Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in its Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim), or (iii) any Claim as to which the Bankruptcy Court has entered a Final Order allowing the Claim. A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim. The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim),

as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code. Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.5    Assumed Agreement.    The Debtor's unexpired leases and other executory contracts that are being assumed pursuant to the Plan.

1.6    Avoidance Action.    Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

1.7    Avoidance Action Claims.    Claims asserted by parties pursuant to sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtor against such parties.

1.8    Ballot.    The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

1.9    Bankruptcy Administrator.    The United States Bankruptcy Administrator for the Western District of North Carolina.

1.10    Bankruptcy Code.    The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

1.11    Bankruptcy Court.    The United States Bankruptcy Court for the Western District of North Carolina.

1.12    Bankruptcy Rules.    The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.13    Business Day.    Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.14    Cash.    Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.15    Cause of Action.    Any right, claim, proof of claim, motion, objection, and/or other legal cause of action, including, but not limited to Avoidance Actions, which a trustee, debtor in possession, or other appropriate party may pursue in any court of competent jurisdiction or other forum.

1.16    Chapter 11 Case.    The Chapter 11 bankruptcy case of Clemmer's Construction, LLC, (Case No. 23-40136), pending in the Bankruptcy Court.

1.17    Claim. Any right to payment from the Estate or the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate or the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.18    Claim Bar Date. October 12, 2023, the date set by the Bankruptcy Court for the filing of Claims against the Debtor.

1.19    Class. A classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.20    Confirmation Date. The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.21    Confirmation Hearing. The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.22    Confirmation Order. An order of the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.23    Contingent Claim. A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.24    Creditor. Any Person that holds a Claim against the Estate.

1.25    Debtor. Clemmer's Construction, LLC.

1.26    Disputed Claim. A Claim which is the subject of a timely objection interposed by the Debtor, if at such time such objection remains unresolved; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; provided, further, that the Debtor, in its sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.27    Effective Date. See Article 10.1.

1.28    Equity Interest. Any interest in the Debtor represented by any class or series of capital stock or membership interests of the Debtor prior to the Petition Date, and any and all warrants, options, convertible, or exchangeable securities, subscriptions, rights (including any preemptive rights), appreciation rights, calls, or commitments of any character whatsoever relating to any such interest in the Debtor. Equity Interests also include, without limitation, all Claims arising from rescission of a purchase or sale of an Equity Interest, for damages arising

4

from the purchase or sale of such an Equity Interest, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.29    Estate. The bankruptcy estate of the Debtor, including all interests in property that the Debtor holds.

1.30    Final Order. An order that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.31    Financial Projections. The forecast in the appendix to the Plan that projects the Debtor's ability to make the payments required by the Plan.

1.32    General Unsecured Claim. Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, or a Priority Tax Claim. Subject to the provisions of this Plan, Allowed General Unsecured Claims may include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

1.33    Interest. Any right, claim, or entitlement arising out of or against an Equity Interest.

1.34    Judgment. A judgment that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.35    Liquidation Analysis. The forecast in the appendix to the Plan that projects the distributions to creditors should this case be converted to Chapter 7 of the Bankruptcy Code.

1.36    Other Priority Claims. Any Claim to the extent entitled to priority in payment under sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

1.37    Person. An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

1.38    Petition Date. August 3, 2023, the date the Chapter 11 Case was filed.

1.39    Plan. This Plan of Reorganization, as it may be from time to time be modified, amended or supplemented, together with any exhibits thereto.

1.40    Priority Non-Tax Claim. Any Claim arising prior to the Petition Date entitled to priority in payment under sections 507(a)(1)-(a)(7) of the Bankruptcy Code.

1.41    Priority Tax Claim. Any Claim arising prior to the Petition Date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.42    Pro Rata Share. As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.43    Professional.    Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Case in accordance with sections 327 and/or 328 of the Bankruptcy Code.

1.44    Reorganized Debtor. The Debtor, as reorganized and re-vested with all of the assets of the Estate pursuant to this Plan.

1.45    Schedules. The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtor in the Chapter 11 Case under section 521 of the Bankruptcy Code.

1.46    Secured Claim. A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to section 506(a) or 1111(b) of the Bankruptcy Code. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.47    Taxes. All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

1.48    Trustee. James David Nave, who was appointed in the Bankruptcy Case pursuant to section 1183 of the Bankruptcy Code.

1.49    Unsecured Claim. A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.50    Unsecured Deficiency Claim. A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or by stipulation, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code.

1.51    Voting Deadline. The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.52    Other Definitions. Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein. Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall

include the masculine, the feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan. The word "including" shall mean "including without limitation."

**ARTICLE 2**
**PROVISIONS REGARDING ALLOWED ADMINISTRATIVE**
**CLAIMS AND ALLOWED PRIORITY TAX CLAIMS**

**2.1    *Administrative Claims and Priority Tax Claims are Not Classified in this Plan*.** Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote to accept or reject the Plan. The treatment of and consideration to be received by holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims. The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

**2.2    *Administrative Claims Bar Date*.** Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals and the Trustee incurred before the Confirmation Date, must be filed and served no later than thirty (30) days after the Confirmation Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date.

**2.3    *Treatment of Administrative Claims*.** Except as provided herein or to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) on (a) the Effective Date, (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due, or (c) if allowed by section 1191(e), in four, equal, annual installments with the first payment due on the anniversary of the Effective Date of the Plan and each payment due each anniversary thereafter.

**2.4    *Treatment of Priority Tax and Secured Tax Claims*.** Each holder of an Allowed Priority Tax Claim or Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim or Allowed Secured Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim or Allowed Secured Tax Claim and the Reorganized Debtor; or (c) in equal, monthly Cash payments starting on June 1, 2024, in an aggregate amount equal to such Allowed Priority Tax Claim or Allowed Secured Tax Claim, together with interest at such rate as required by section 511 of the Bankruptcy Code or otherwise as required by section 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim or Allowed

Secured Tax Claim is paid in full within five (5) years from the Petition Date.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1     *Class 1:  Allowed Secured Claims of Commercial Credit Group, Inc. (CCG)*

      3.1.1     *Classification.*

Class 1 consists of all Allowed Secured Claims of CCG.

      3.1.2     *Treatment.*

These claims shall be treated as four secured obligations of the Reorganized Debtor: (1) in the amount of $49,074.00 as of the Petition Date plus $24.15 per day through confirmation and less payments received by CCG since the petition Date; (2) in the amount of $67,480.10 as of the Petition Date plus $33.28 per day through confirmation and less payments received by CCG since the Petition Date; (3) in the amount of $127,222.34 as of the Petition Date plus $62.16 per day through confirmation and less payments received by CCG since the Petition Date; and (4)  in the amount of $114,054.56 as of the Petition Date plus $56.00 per day through confirmation and less payments received by CCG since the Petition Date, the aggregate amount of which, as of the date of plan confirmation, shall be collectively referred to as the "CCG Claim".

The CCG Claim is and shall remain secured by the following equipment as may be more fully described in the Negotiable Promissory Notes and Security Agreements (the "Notes") attached as Exhibits to the Stipulation for Payment of Adequate Protection filed in this case at D.E. 28: one 2022 Caterpillar 304 mini excavator (S/N AN400788); one 2022 Caterpillar 289D3 compact track loader (S/N JX911440); once 2023 Caterpillar 308 mini excavator (S/N GG807404); and one 2018 Caterpillar D5K2 LGPCB crawler dozer (S/N KY203707).

CCG's Claim, for purposes of payment, shall be treated as a claim in the total amount of $357,831.00 as of the Petition Date plus $175.58 per day through confirmation and less payments received by CCG since the Petition Date, and shall accrue interest from and after the date of confirmation at the annualized fixed rate of 12% per anum and shall, on a consolidated basis, be repaid in equal monthly installments of $9,234.00 each. Pursuant to that certain Agreed Order Approving Stipulation for Adequate Protection filed in this case on 2 October 2023 as docket entry no. 38, the Debtor has been making payments to CCG on the claims secured by the equipment described above. The Debtor will continue payments on the CCG Claim from and after the confirmation date. The parties will execute whatever documents are necessary to clarify the change of interest rate to 12% from the current rate, and to otherwise clarify and substantiate the liability of the Reorganized Debtor to CCG on the CCG Claim. Such documents may be generally in the form of the Notes attached to the Stipulation except as modified by the terms of the Plan. Nothing in this Plan shall eliminate or otherwise effect the liability of any other parties currently obligated for the amounts owed to CCG.

Except as otherwise provided herein, the Reorganized Debtor shall owe no additional amounts or fees to CCG.

CCG shall retain its liens on the four items of equipment described above until its respective Allowed Class 1 Claims are satisfied as set forth in the Plan.

The Reorganized Debtor shall maintain appropriate insurance coverage on the equipment described above, with CCG named as additional insured and loss payee, as required by the terms of the Notes and the additional documents provided for herein.

### 3.1.3    *Impairment and Voting*

Class 1 is impaired by the Plan.  The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

## 3.2    *Class 2: Allowed Secured Claim of Westlake Services, LLC (Westlake)*

### 3.2.1    *Classification*

Class 2 consists of the Allowed Secured Claim of Westlake.

### 3.2.2    *Treatment*

The claim of Westlake shall be treated as a secured claim of the reorganized Debtor in the amount of $15,567.34 (less any amount received by Westlake since the Petition Date) secured by a 2012 Dodge commercial 5500 RAM vehicle.

Westlake allowed secured claim in the amount of $15,567.34 (less any amount received by Westlake since the Petition Date) secured by the Debtor's 2012 Dodge commercial 5500 RAM vehicle shall accrue interest from and after the Confirmation Date at the rate of 10.89% and shall be repaid in continuing equal monthly installments of $606.33 each continuing each month until the debt is paid in full.

Westlake shall retain its lien on the 2012 Dodge commercial 5500 RAM vehicle as said lien existed on the petition date until its allowed Class 2 Claim is satisfied as set forth in the plan.

### 3.2.3    *Impairment and Voting*

Class 2 is impaired by the Plan. The holder of Class 2 Claim is entitled to vote to accept or reject the Plan.

## 3.3    *Class 3: Claim of Internal Revenue Service*

### 3.3.1    *Classification*

Class 3 consists of the filed Proof of Claim of Internal Revenue Service.

### 3.3.2 *Treatment*

The Debtor believes that it owes nothing to the Internal Revenue Service. The Internal Revenue Service filed a Proof of Claim on 23 October 2023 in the amount of $2,578.85, as a priority claim, based on an estimated liability for withholding tax for the quarter ending 30 September 2022. The Debtor believes that it owes no taxes for the period in question.

In the event that taxes are due, the amount so determined will be paid in four (4) semi-annual installments, with each installment being one-fourth (1/4) of the priority tax claim, with the first such installment being due 180 days after the Confirmation Date.

### 3.3.3 *Impairment and Voting*

Class 3 is impaired by the Plan. The holder of Class 3 Claim is entitled to vote to accept or reject the Plan.

## 3.4 *Class 4: General Unsecured Claims*

### 3.4.1 *Classification*

Class 4 consists of the Allowed General Unsecured Claims.

### 3.4.2 *Treatment*

These Claims shall be treated as unsecured obligations of the Reorganized Debtor. Allowed General Unsecured Creditors shall be paid a Pro Rata share of the Reorganized Debtor's projected "disposable income" (as defined by section 1191(d) of the Bankruptcy Code) for the years ending in 2024, 2025 and 2026. Payments on Claims in Class 4 will be made quarterly, with the first payment being made on 30 June 2024, followed by eleven (11) additional subsequent quarterly payments from that date.

### 3.3.3 *Impairment and Voting*

Class 4 is impaired by the Plan. The holder of Class 4 Claim is entitled to vote to accept or reject the Plan.

## 3.5 *Class 5: Equity Interest in the Debtor*

### 3.5.1 *Classification*

Class 5 consists of the Equity Interest in the Debtor.

### 3.5.2 *Treatment*

All Equity Interests held prior to the Petition Date shall be retained.

### 3.5.3    *Impairment and Voting*

Class 5 is not impaired by the Plan.

## ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1    ***Impaired Classes Vote.***  Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

4.2    ***Designation of Classes Entitled to Vote.***  Holders of Claims and Interests in those Classes which are impaired are entitled to vote on the Plan.

4.3    ***Nonconsensual Confirmation.***  With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan by cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, *and the filing of this Plan shall constitute a motion for such relief.*

## ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1    *Assumption/Rejection.*

5.1.1    Through this Plan, the Debtor hereby assumes the following unexpired leases and executory contracts:

| Any and all insurance policies |
|---|

5.1.2    Any executory contract or unexpired lease assumed pursuant to the Plan shall be fully enforceable by the Reorganized Debtor in accordance with the terms thereof, and shall include all written modifications, amendments, and supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises.

Notwithstanding the forgoing, the Debtor may move to assume any unexpired lease or executory contract at any point on or before the Confirmation Date.

5.1.3    Unless otherwise provided, all payments, including all cure payments, adequate assurance or compensation for actual pecuniary loss, that are due or required to be paid

11

or provided by sections 365(b)(1)(A)-(C) of the Bankruptcy Code (collectively the "Cure Payments") for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtor, shall be made by the Reorganized Debtor within 365 days of the Effective Date. The Debtor hereby gives notice that there are no Cure Payments due with respect to any executory contracts and unexpired leases to be assumed under the Plan. Any non-debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to assumption of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must file a written objection to the assumption of such executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan.

      5.1.5      Unless the non-debtor party to any executory contract or unexpired lease to be assumed files and serves on the Debtor and its counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Confirmation Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtor and the Reorganized Debtor, in connection with such assumption of the executory contract or unexpired lease unless otherwise set forth in this Plan. Any Claims for Cure Payments not Filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtor, its Estate, the Reorganized Debtor, and its assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof unless provided otherwise in this Plan. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and (b) in the discretion of the Debtor, the Debtor (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtor may reject the executory contract or unexpired lease. The Reorganized Debtor shall have ten (10) Business Days after any order determining the amount of a disputed Cure Payment in which to reject of such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected.

      5.1.6      Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date, assumed by this Plan, or previously been assumed by the Debtor in Possession pursuant to an order of the Bankruptcy Court, or that is the subject of a pending motion to assume as of the Confirmation Date, shall be deemed rejected by the Debtor as of the Petition Date pursuant to sections 365 and 1123 of the Bankruptcy Code.

      5.2      *Effect of Confirmation Order on Executory Contracts and Unexpired Leases.* Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the

rejection of all executory contracts and unexpired leases which have not been previously assumed by the Debtor pursuant to an order of the Bankruptcy Court or that are not the subject of a pending motion to assume as of the Confirmation Date. Any such rejection shall be effective as of the day before the Petition Date, and all executory contracts and unexpired leases so rejected shall be conclusively deemed burdensome to and not in the best interest of the Estate.

5.3     ***Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.*** Any Claims for damages arising from rejection of an executory contract or unexpired lease under this Plan must be filed no later than 14 days after the Confirmation Date or be forever barred and unenforceable against the Debtor and the Estate, and the holders of such Claims shall receive no distributions under the Plan.

### ARTICLE 6
### DISTRIBUTIONS UNDER THE PLAN

6.1     ***Distributions Under the Plan.*** The Reorganized Debtor or any distribution agent the Reorganized Debtor may retain shall make all distributions to the holders of Allowed Claims and Allowed Interests that are required under this Plan. If any litigation now pending is resolved by Final Order or settlement, and the Debtor is ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due. To the extent this Plan is confirmed pursuant to section 1191(b), this Plan invokes section 1194(b) such that the Reorganized Debtor, and not the Trustee, shall have the obligation to make payments to holders of Allowed Claims.

6.2     ***Delivery of Distributions.*** Distributions to a holder of an Allowed Claim or Allowed Interest shall be made at the address of such holder as indicated on the Proof of Claim filed by such holder. In the event that any such distribution is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Reorganized Debtor has determined such then current address, provided, however, that if any distribution remains unclaimed after the first anniversary after distribution, such distribution shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtor. In such event, the Claim of the holder for such distribution shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to such distribution under this Plan pursuant to section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.

6.3     ***Third-Party Agreements.*** Distributions to Creditors hereunder will not affect the right of any Person to levy, garnish, attach, or employ other legal process with respect to such distributions. All subordination agreements entered into by any parties in interest shall be

enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

6.4     *Manner of Payment Under the Plan.*   At the option of the Reorganized Debtor, any payment to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

6.5     *No Fractional Distributions.*   For purposes of distributions, Cash distributions may be rounded up or down, as applicable, to the nearest whole dollar.

## ARTICLE 7
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

7.1     *Sources of Funding.*   The Plan contemplates that distributions will be funded by revenues generated during the Debtor's post-petition operations and the Reorganized Debtor's future revenue.

7.2     *Disclosure of Employment of Insiders.*   After the Confirmation Date, Michael G. Clemmer will remain employed with the Debtor at an annual salary as shown on the attached Financial Projections.

7.2     *Authority to Act Following Confirmation Date.*   Upon confirmation of this Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan.   In connection with the occurrence of the Effective Date, the Reorganized Debtor is authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

7.3     *Authority to Act Following Effective Date.*   The Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, articles, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

7.4     *Status of Liens of Secured Tax Claims and Other Lien Claimants.*   Unless otherwise provided in this Plan or by Order of the Bankruptcy Court, on the Effective Date, all existing liens held by any Class or Classes on the Debtor's assets shall retain the same priority that existed on the Petition Date, provided that such liens shall not extend to property acquired by the Debtor after commencement of the Chapter 11 Case as set forth in section 552 of the Bankruptcy Code.   Section 552 of the Bankruptcy Code shall continue to apply to all such liens and security interests following confirmation of the Plan.   All other liens and encumbrances not specifically provided for in the Plan shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.   Post-confirmation, the Reorganized Debtor is permitted to liquidate

any assets subject to a lien as provided herein. Any creditor holding such a lien shall release the same immediately upon its receipt of the proceeds of such sale up to the full amount of its Allowed Secured Claim related to the asset sold. Any creditor holding a Claim that was scheduled as contingent, unliquidated, or disputed who failed to file a Claim by the Claim Bar Date shall have no lien against any assets of the Reorganized Debtor.

7.6 **Effectuating Documents and Further Transactions.** The Debtor and the Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, articles, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtor and the Reorganized Debtor, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

## ARTICLE 8
## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

8.1 **Objections to Claims and Interests; Prosecution of Disputed Claims and Interests.** The Debtor and, after the Effective Date, the Reorganized Debtor, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor or Reorganized Debtor, as applicable, or compromised and settled in accordance with the business judgment of the Debtor or Reorganized Debtor, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be filed no later than one year after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtor upon *ex parte* motion.

8.2 **Estimation of Disputed Claims and Interests.** The Debtor and, after the Effective Date, the Reorganized Debtor, may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to section 502(c) of the Bankruptcy Code whether or not the Debtor or the Reorganized Debtor have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

8.3 **No Distribution on Account of Disputed Claims and Interests.** Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.

## ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

9.1 **Vesting of Assets and Retained Causes of Action.** On the Confirmation Date, pursuant to section 1141(b) of the Bankruptcy Code, all assets of the Debtor and Debtor in

15

Possession shall vest in the Reorganized Debtor free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order. From and after the Confirmation Date, the Reorganized Debtor may operate its business and may own, use, acquire and dispose of its assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Case had never been filed. Except as otherwise specifically provided in this Plan, the Reorganized Debtor shall retain all rights and is authorized to commence and pursue, as it deems appropriate, any and all claims and causes of action, including, but not limited to Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan.

9.2     ***Binding Effect.*** Subject to the occurrence of the Effective Date as set forth in Article 10 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtor and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

9.3     ***Discharge of the Debtor.*** Except as otherwise provided in this Plan or the Confirmation Order, and to the fullest extent permitted by sections 1141, 1181(c), and 1192 of the Bankruptcy Code, the rights afforded in this Plan and the treatment of Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtor, the Debtor in Possession, the Reorganized Debtor or the assets, interests in, or property of the Debtor, the Debtor in Possession or the Reorganized Debtor of any nature whatsoever, including any Interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, all Claims arising before the Effective Date (including those arising under sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtor and the Debtor in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtor's officers, directors, employees, or agents, or any conduct for which the Debtor may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtor shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan and (b) Claims and Interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Entities are precluded and forever barred from asserting against the Debtor, the Debtor in Possession, or the Reorganized Debtor, or the assets, properties, or Interests in or property of the Debtor, the Debtor in Possession, or the Reorganized Debtor of any nature whatsoever, any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases there for were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b)

16

Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan.

Except as expressly provided in this Plan, nothing herein shall be construed to affect the liability of any other person or entity for a debt that is discharged as to the Debtor, the Debtor in Possession, and/or the Reorganized Debtor.

9.4 ***Term of Certain Injunctions.*** Unless otherwise provided herein or in the Confirmation Order, all injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case, whether pursuant to the provisions of the Bankruptcy Code, the Plan, or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter including, but not limited to, the automatic stay provided by section 362 of the Bankruptcy Code; provided that, upon default, any holder of an Allowed Secured Claim or Allowed Priority Claim shall not be enjoined nor prohibited from exercising its in rem rights as to such collateral under applicable state law following occurrence of the Effective Date, provided that such Creditor first gives the Reorganized Debtor written notice of such default and thirty days' to cure such default. In addition, on and after the Confirmation Date, the Debtor may seek such further orders as it deems necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

9.5 ***No Successor Liability.*** Except as otherwise stated in the Plan or Confirmation Order, neither the Debtor nor the Reorganized Debtor will have any responsibilities for any liabilities or obligations of the Debtor or any of the Debtor's past or present subsidiaries relating to or arising out of the operations of or assets of the Debtor or any of the Debtor's past or present subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. The Reorganized Debtor shall have no successor or transferee liability of any kind or character, for any Claims; provided, however, that the Reorganized Debtor shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in this Plan.

9.6 ***Preservation of Claims Not Settled or Released.*** Without limiting any other provisions of this Plan, unless a Claim or cause of action against a Creditor or other Entity is expressly and specifically waived, released, compromised or settled in this Plan or any Final Order, the Reorganized Debtor reserves the same for pursuit by the Reorganized Debtor after the Effective Date. No preclusion doctrine, including, without limitation, res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or causes of action upon or after the Confirmation Date or the Effective Date of the Plan. The Reorganized Debtor reserves the right to pursue or adopt any claims (and any defenses), causes of action, or objections of the Debtor or Debtor in Possession as trustee for or on behalf of its Creditors, not specifically waived, released, compromised or settled in this Plan or any Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtor shall be a representative of the Estate appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtor has incurred an obligation (on account of services,

purchase or sale of goods, tort, breach of contract or otherwise), or who has received services or otherwise transacted business with the Debtor in any capacity should assume that such obligation, transfer, or other transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action, claim, demand, or objection after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtor's Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

## ARTICLE 10
## THE EFFECTIVE DATE OF THE PLAN

10.1    *Effective Date of Plan.*  The "effective date of the plan," as used in section 1129 of the Bankruptcy Code, shall occur on the thirtieth day following entry of the Confirmation Order.

10.2    *Revocation of Confirmation Order or Withdrawal of Plan.*  The Debtor may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case.  If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur as set forth in Article 10, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court.  In such event, the Plan and the Confirmation Order shall be of no further force or effect and, the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtor's respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtor's rights and claims against all Entities shall be fully preserved and nothing contained herein shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other persons or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor or any other persons.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1    *Notice.*  Any notice required or permitted to be provided to the Debtor or Reorganized Debtor under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

R. Keith Johnson
1275 S. NC 16 Bus. Hwy.
Stanley, NC 28164

11.2    *Headings.*  The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

11.3   *Governing Law.*  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

11.4   *Additional Documents.*  The Debtor has the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtor deems necessary or appropriate in its reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

11.5   *Compliance with Tax Requirements.*  In connection with this Plan, the Debtor and the Reorganized Debtor will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.6   *Exemption from Transfer Taxes.*  Pursuant to section 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such section of the Bankruptcy Code.

11.7   *Further Authorizations.*  The Debtor, and after the Effective Date, the Reorganized Debtor, may seek such orders, judgments, injunctions, and rulings it deems necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

11.8   *Successors and Assigns.*  The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

11.9   *Modification and Amendment of the Plan.*  Subject to the restrictions in section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtor, and, after the Effective Date, by the Reorganized Debtor.

11.10  *Termination of Trustee.*  The Trustee shall be terminated upon the Reorganized Debtor's confirmation that the Plan has been substantially consummated by filing a notice of substantial consummation on the docket in the Bankruptcy Case.

11.11  *506(b), (c) Claims.*  No party shall be entitled to fees, expenses, or compensation pursuant to section 506(b) or (c) of the Bankruptcy Code.

11.12  *Remedies.*  Subject to the terms and procedures of this Plan and/or any order confirming this Plan, and as required by section 1191(c)(3)(B), the remedies available to creditors holding an Allowed Claim for breach of the Plan shall be to: (i) bring an action to

enforce the Plan in any court of competent jurisdiction including but not limited to the respective state court remedies and/or a breach of contract claim for the terms provided for under this Plan; (ii) file a Notice of Default in this Court followed by a Motion requesting liquidation of certain assets to cure default; or (iii) exercise their in rem rights as to their collateral under applicable state law following occurrence of the Effective Date (after appropriate notice and right to cure as permitted by this Plan).

## ARTICLE 12
## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

12.1   *Executory Contracts and Unexpired Leases.*   To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2   *Causes of Action.*   To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtor after the Effective Date.

12.3   *Disputed   Claims,   Contingent   Claims   and   Unliquidated   Claims Allowance/Disallowance.*   To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan or by prior, Final Order of the Bankruptcy Court), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

12.4   *Enforcement/Modification of Plan.*

12.4.1   To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2   To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3   To hear and determine other matters that may be set forth in the Plan and

Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in the Chapter 11 Case.

12.4.5 To hear and determine any issue relating to distributions under the Plan.

12.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under section 105 of the Bankruptcy Code.

12.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by section 1142 of the Bankruptcy Code.

12.5 **Compensation of Professionals.** To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan (whether pursuant to order of the Court, agreement, or otherwise), and to approve the reasonableness of any payments made or to be made as provided in section 1129(a)(4) of the Bankruptcy Code. To the extent not fully paid on the Effective Date, the Reorganized Debtor (and/or its assigns) is permitted and authorized to reimburse Professionals in installments.

12.6 **Settlements.** To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtor or the Reorganized Debtor.

12.7 **Taxes.** To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor or Debtor in Possession may be liable, directly or indirectly.

12.9 **Specific Purposes.** To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

12.10 **Final Decree.** To enter an order or final decree closing the Chapter 11 Case.

Dated: Lincoln County, North Carolina
December 15, 2023

Respectfully submitted,

**CLEMMER'S CONSTRUCTION, LLC**            **R. Keith Johnson**

By: _Michael G. Clemmer_                    /s/ R. Keith Johnson
Michael G. Clemmer, Member Manager          R. Keith Johnson (Bar No. 8840)
                                            1275 S. NC 16 Bus. Hwy.
                                            Stanley, NC 28164
                                            *Counsel for the Debtor*

## Exhibit 1 – Projections

|  | 2024 | 2025 | 2026 |
|---|---|---|---|
| Income | 1,519,992 | 1,519,992 | 1,519,992 |
|  |  |  |  |
| Expenses |  |  |  |
| Fuel | 53,188 | 53,188 | 53,188 |
| Job Materials | 332,151 | 332,151 | 332,151 |
| Marketing | 1,000 | 1,000 | 1,000 |
|  | 1,500 | 1,500 | 1,500 |
|  |  |  |  |
|  |  |  |  |
| Insurance | 43,043 | 43,043 | 43,043 |
| Office Expenses | 600 | 600 | 600 |
|  |  |  |  |
| Officer Pay | 150,000 | 150,000 | 150,000 |
|  |  |  |  |
| Sub Contractors | 19,000 | 19,000 | 19,000 |
| Taxes and Licenses | 1,000 | 1,000 | 1,000 |
| Utilities | 3,800 | 3,800 | 3,800 |
|  |  |  |  |
| Repairs & Maintenance | 24,274 | 24,274 | 24,274 |
| Tools | 19,000 | 19,000 | 19,000 |
| Rental - Equipment | 44,092 | 44,092 | 44,092 |
| Contract Hauling | 78,485 | 78,485 | 78,485 |
| Food (Labor and out-of-town jobs) | 20,913 | 20,913 | 20,913 |
| Labor | 495,781 | 495,781 | 495,781 |
| Mulching | 7,300 | 7,300 | 7,300 |
| Landfill fees | 6,228 | 6,228 | 6,228 |
| Total Expenses | 1,301,355 | 1,301,355 | 1,301,355 |
|  |  |  |  |
| Net Available for Plan Payments | 218,637 | 218,637 | 218,637 |
| Less Secured Debt Payments to Ally | 11,292 | 11,292 | 11,292 |
| Less Secured Debt Payments to Westlake Financial | 7,276 | 7,276 | 7,276 |
| Less Secured Debt Payments to Commercial Credit Group | 110,808 | 110,808 | 110,808 |
| Less Chapter 11 Admin Fees | 4,000 | 0.00 | 0.00 |
|  |  |  |  |
|  |  |  |  |
| Net Available for General Unsecured Creditors | 85,261 | 85,261 | 85,261 |

## Exhibit 2 – Liquidation Analysis

| | |
|---|---|
| Personal Property *1 | $573,050 |
| Less Liens | $373,397 |
| Less Ch. 7 Admin Fees (Commission, Legal Fee, Accounting Fees, Costs of Sale) | $63,000 |
| Less Ch. 11 Admin Fees *2 | $36,000 |
| IRS Priority Claim *3 | $2,600 |
| Available to General Unsecured Creditors in Ch. 7 | $98,053 |
| Percent Payout to General Unsecured Creditors in Ch. 7 | 33.8% (approximate) |
| | |
| Available to General Unsecured Creditors per Plan | $252,000 |
| Percent Payout to General Unsecured Creditors per Plan | 87% |

*1  Accounts receivable - $33,050.00
     Equipment and vehicles - $540,000.00

*2  Trade payables - $20,000
     Attorney fees - $12,000.00
     Accountant fees - $4,000.00

*3  Disputed