UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
SHELBY DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No.  23-40136 |
| CLEMMER'S CONSTRUCTION, LLC, | ) |
| | ) Chapter 11, Subchapter V |
| Debtor. | ) |

The United States Bankruptcy Administrator for the Western District of North Carolina ("Bankruptcy Administrator") objects (the "Objection") to the Debtor's *Plan of Reorganization* (the "Plan")[1] filed on December 15, 2023 [ECF No. 65], and says:

Recently filed proofs of claim [Claims Nos. 6-1, 7-1, and 8-1] and an objection to the Plan [ECF No. 72] require an investigation into whether assets, liabilities, and/or transfers were omitted from the Debtor's schedules and statements [ECF Nos. 1, 25, 32, 65]. The undersigned has requested bank statements from the Debtor to review prepetition activity and supporting documents from these unscheduled creditors. Additional time may be required to investigate prior to the confirmation hearing.

The Debtor should provide evidence of the feasibility of the Plan as required by sections 1191 and 1129(a)(11). While the Debtor generated positive cash flow in August and September 2023, the Debtor's monthly reports show negative cash flow in October and November 2023. Filing the December monthly status report prior to the confirmation hearing would assist the Court and parties in assessing the Debtor's financial performance.

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the Plan.

In the monthly operating reports, the Debtor has allocated personal expenses paid for the benefit of the Debtor's principal as "draws." This allocation requires reliance on the Debtor's principal to differentiate between personal and business expenses – a task made more difficult by recurring payment of meals and lodging for work crews. The Debtor's principal must establish his own bank account, and the Debtor should make regular, consistent payments to the Debtor's principal for his compensation going forward.[2]

In addition to amendments that may be required to account for certain omitted claims, the budget attached to the Debtor's plan as Exhibit 1 requires the following amendments:

a) To the extent that the Debtor is required to pay payroll taxes and/or unemployment taxes, the Debtor's budget should include these expenses. The monthly operating reports do not reveal payments for employment taxes.

b) The budget includes a $1,500 annual expense that lacks a description. The budget should be amended to include this information. To the extent this expense was included in error, it should be deleted from the budget.

c) The "Net Available" for distributions to unsecured creditors fails to account for the additional $4,000 available to distribute in 2024 and 2025 after completing payments on chapter 11 administrative expenses.

---

[2]   The same issue was discussed at the Debtor's 341 meeting on October 10, 2023, in connection with prepetition payments of Mr. Clemmer's personal mortgage, when Ms. Kenny explained that the Debtor "cannot pay your personal bills. . . . That should have stopped at the time the case was filed." The November monthly status report reveals that the Debtor paid the owner's mortgage that month.

    d) The budget includes $11,292.00 per year payable to Ally. The Debtor's schedules, filed claims, and UCC filings do not reveal any liability to Ally. To the extent this secured payment was included in the budget in error, it should be removed, which would increase the funds available to distribute to unsecured creditors.

Any amendments to the budget which reduces expenses or plan payments to secured creditors should inure to the benefit of unsecured creditors.

    The Plan proposes payments to unsecured creditors over a three-year period, whether the plan is confirmed consensually under § 1191(a) or crammed down under § 1191(b). The Bankruptcy Code provides that when a plan is confirmed under § 1191(b), the plan term shall be a "3-year period, or such longer period not to exceed 5 years as the court may fix." One court held that "the Bankruptcy Code sets a baseline requirement that a debtor commit three years of projected disposable income, while it also affords the bankruptcy court discretion to require more as a condition of finding a plan fair and equitable." *Legal Serv. Bureau, Inc. v. Orange Cty. Bail Bonds, Inc. (In re Orange Cty. Bail Bonds, Inc.)*, 638 B.R. 137, 146 (B.A.P. 9th Cir. 2022). If the Debtor sold secured collateral or collected insurance proceeds without paying off secured creditors, the Court should, at a minimum, establish a 5-year commitment period if the plan is not consensually confirmed.

    The Debtor's schedules, *Agreed Order Approving Stipulation for Adequate Protection* [ECF No. 38], and proposed Plan all contemplate payment by the Debtor for certain equipment owned by Clemmer's Landscape, Inc. and financed with

Commercial Credit Group ("CCG"). The undersigned did not object to the Debtor's adequate protection payments to CCG because Clemmer's Landscape, Inc. was no longer in business and the Debtor had use for the equipment. To the extent that the recent claims and objections filed by unscheduled creditors reveal broader issues with observation of corporate formalities, it may be appropriate for this arrangement to be revisited.

Wherefore, the undersigned asks that the Court require amendments to the budget and the Plan to afford additional distributions to unsecured creditors as set forth herein; to the extent required by the Bankruptcy Code or by the evidence presented, deny confirmation of the Debtor's Plan; and grant such other and further relief as the Court deems just and proper.

This the 21st day of January, 2024.

/s/ Shelley K. Abel
Shelley K. Abel
United States Bankruptcy Administrator
401 W. Trade Street, Suite 2400
Charlotte, NC  28202-1633
N.C. Bar #34370
Tel:  (704) 350-7587   Fax:  (704) 350-7577
shelley_abel@ncwba.uscourts.gov